GODWIN *et al* v. MARVEL *et al.*
Orphans' Court of Delaware. Kent.
*(August* 12, 1953.)

*George M. Fisher* and *Herman C. Brown,* both of Dover, for petitioners.

*Max Terry,* Dover, for certain respondents.

Decree in accordance with opinion.

DESCENT AND DISTRIBUTION.
Where only children or issue of deceased children of intestate's brothers and sisters survived intestate, proceeds from sale of intestate's realty would be divided by *per stirpes* division based upon number of intestate's brothers and sisters. (12 *Del. C.* § 502(3).)

James H. Satterfield died intestate in 1950, owning a house and lot in Frederica. He left to survive him no widow, no father or mother, and no brothers or sisters. There were five brothers and sisters who predeceased him, all leaving children or issue of deceased children to survive them. Altogether there were eleven nephews and nieces, some of whom predeceased the intestate leaving issue. The petition filed in this case avers that the proceeds of the real estate should be divided equally among the living nephews and nieces and the issue of those who died before the intestate or, in other words, that the primary number of shares is eleven. The appearing respondents contend that the division should be *per stirpes* or, in other words, that the number of primary shares is five.

The pertinent statute is 12 *Del. C.* § 502, which gives the rules of descent of real estate. It provides for descent first to children and issue of deceased children; if there be none, then to father and mother or the survivor of them. Paragraph (3) reads in part as follows:

"If there be no father or mother, then in equal shares to his brothers and sisters, and the lawful issue of any deceased brother or sister, by right of representation. * * *."

Paragraph (4) provides if there be no brother or sister or issue of such, then the descent is to the next of kin in equal degree, and the lawful issue of such next of kin, by right of representation.

CAREY, J.:

This case presents the problem of whether our intestate statute requires a per capita division among nephews and nieces, or a *per stirpes* division based upon the number of brothers and sisters of the intestate, where none of those brothers and sisters survive.

This question was answered, as to personal property, by Chancellor Ridgely in *Richard Banings Will*, Orph. Ct., 3 Del.

Cas. 49 in the year 1822. The statute under which his decision was rendered is found in 1 *Del. Laws* 284, being Chapter CXIX, 24 Geo. II. The Chancellor there pointed out a material difference between our statute and the English Statute of Distribution (22 & 23 Car. 11, c. 10). He showed that, under the English statute, distribution among nephews and nieces was per capita because that act made no specific mention of brothers or sisters or their issue. It gave the surplus to the children or their representatives and, if there were none, "equally to every of the next of kindred who are in equal degree, and those who legally represent them". The Chancellor next showed that under our Act then in force, if there were no children or issue of such, the residue was distributed equally among the brothers and sisters or their representatives, and only gave the residue to the next of kindred in the absence of brothers and sisters, or issue thereof.* He directed a *per stirpes* division.

The statute upon which the *Baning* case was based contained exactly the same language for the distribution of personal property as for the descent of real estate, and although the decision dealt with personal property, it applied with equal force to real estate. It accordingly becomes important to ascertain whether the present law of Delaware is or is not substantially the same as it stood in 1822.

In examining the legislative history of our Act, it is interesting to notice the provisions of Chapter 6, 12 Williams III, adopted in 1700, and published in 1 *Del. Laws*, Appendix Page 26. Like the English statute of descents, this Act, if there were no children or issue thereof, gave both the personal and real estate to the next of kindred in equal degree and those who legally represent them. There seems to have been little change in this scheme until the Act of 24

---

*For similar holding under the New York statute of 1786, see *Jackson v. Thurman,* 6 Johns. 322.

Geo. II, c. 119, when for the first time it was expressly provided that, if there be no children or legal representatives thereof, the estate should be distributed equally among the brothers and sisters, or their legal representatives. If there were none, then it passed to the next of kindred in equal degree or those who legally represent them. As indicated above, it was this statute which was in effect when the *Baning* case was decided.

In the year 1827 a new statute was adopted, being found in 7 *Del. Laws* 316. It applied only to real estate and gave it, if there were no children or issue of them, "to every the brothers and sisters * * * and the lawful issue of any such brothers and sisters who shall have died before the decease of the intestate". It also contained this provision: "The issue of children, brothers, sisters, or other kin, who shall have died before the decease of the intestate, shall in all cases take according to stocks by right of representation, that is to say; the same share which such children, brothers, sisters or other kin if living would have taken: and this rule shall hold although the descent shall be entirely to issue of deceased children, brothers, sisters or other kin". Two years later in 1829, a statute was adopted which altered the manner of distribution of personal property. 7 *Del. Laws* 217, 227. It designated the same order of descent in similar language as did the Act of 1827 but, in contrast to the proviso found in the latter act, contained this paragraph: "Distribution among children, brothers, sisters, or other kin in equal degree shall be in equal portions; but issue of children, brothers or other kin who shall have died before the intestate, shall take according to stocks by right of representation; and this rule shall hold although the distribution be entirely among such issue". It will be noticed that the statute of distribution, enacted only two years after the statute of descent, contained an express direction that distribution among children, brothers or other kin in equal degrees shall be in equal portions; and this statement

still appears in our present law of distribution. 12 *Del. C.* § 513. It was not included in the Act of 1827, however, nor is it found in our present law of descents. 12 *Del. C.* § 501.

The Act of 1827 was changed in a number of minor respects in the *Revised Code of* 1852, Chapter 85. The language there used was "in equal shares to his brothers and sisters, and the lawful issue of any deceased brother or sister, by right of representation. * * *." The words "inheritance * * * by right of representation" are defined as taking place when the issue of a deceased heir takes the same share, or right in the estate of another person, which their parent would have taken, if living. It then says "such representation shall hold although the descent shall be entirely to issue of deceased children, brothers, sisters, or other kin."

The language of the *Revised Code of* 1852 is substantially the same as is found in the present Code. Its meaning is, in my opinion, the same as the act of Geo. II as interpreted by Chancellor Ridgely, in so far as the present case is concerned. Whether this is true with respect to personal property in the light of the change made in 1829 need not now be considered.

The petitioners have relied upon *In re Cavender's Estate,* 14 Del. Ch. 465, 130 A. 746, which was followed by *In re Estate of White,* 27 Del. Ch. 438, 37 A. 2d 167. Both of those cases dealt with the fourth, rather than the third, paragraph of the rules of descent, which applies when there are no brothers or sisters or issue of them, and which in such case gives the realty to the next of kin in equal degree, and the lawful issue of them, by right of representation. It is true that the Cavender opinion quotes with approval language from both Blackstone and Kent which would cast doubt upon the correctness of the *Baning* holding were it not for the difference in the old English Statute and the Delaware law, but the Court quoted those eminent authorities only for the purpose of assisting in determining the proper interpretation of Para-

graph (4), and the Court clearly had no intention of passing upon the meaning of Paragraph (3). The effect of the two cases is this: under (4), descent is directly to the next of kin in equal degree in equal shares, and representation takes place only when there are issue of deceased next of kin to that degree; under (3) descent is to the brothers and sisters, and the issue of any who are deceased take by representation even though no brother or sister survives the intestate.

My conclusion is that the proper method of dividing the proceeds from the sale of the real estate in this case is the method suggested by the respondents, to wit: a *per stirpes* division based upon the number of brothers and sisters. The decree of distribution will be based upon this conclusion.

---

This opinion was inadvertently omitted from 9 Terry (48 Del. Reports). Reported in 99 A. 2nd 354.